## BIGNALL v. HARVEY and another.

(*Circuit Court, N. D. New York.*   October 25, 1880.)

1. RE-ISSUED LETTERS PATENT granted to John Deuchfield, January 16, 1872, for 14 years from April 20, 1858, "for an improvement in cooling and drying meal," *held,* not void for want of novelty.

2. SAME—IDENTITY OF PATENTEE.—A re-issue to John Deuchfield is not void because the original patent was issued to John Denchfield, where the change in the letter was a mere clerical and accidental mistake of the patent-office, and no question had been raised at the taking of the proofs as to the identity of the patentee, and where there was in fact sufficient evidence given to show that the original and re-issue were issued to the same person.

*Benjamin F. Thurston* and *Edward S. Jenney,* for plaintiff.

*George Harding* and *George B. Selden,* for defendants.

BLATCHFORD, C. J.   This suit is brought on re-issued letters patent granted to John Deuchfield, January 16, 1872, for 14 years from April 20, 1858, "for an improvement in cooling and drying meal." It is the same patent which was the subject of the suit in *Herring* v. *Nelson,* 14 Blatchf. 293. In that case, after full consideration, the re-issued patent was sustained against the objections that it was not for the same invention as the original patent; that new matter had been introduced into the specification of the re-issue contrary to the statute; and that the patentee was not the first inventor of what is claimed in the first claim of the re-issued patent.

The defendants in the present case do not ask for a review or reconsideration of any of the specific questions disposed of in the former case.   But two new matters are brought up on the question of novelty.   One is a patent granted in England, December 8, 1853, to Joseph Robinson.   The other is an addition granted July 31, 1840, to a French patent granted April 21, 1837, to one Cartier.

The Robinson patent cannot be held to be an anticipation. It is clear, from the drawings of the plaintiff's patent, that the curbs of the mill are open curbs, as distinguished from close curbs; that is, are the open curbs which were in general use in the American mills at the time.   Open curbs are curbs or

covers over the upper millstone, provided with a circular opening over the eye of the upper stone. This enables the air in the plaintiff's arrangement to pass over the top of the upper stone, and through the annular space between the outer edges of the stones and the inside of the curb, and thence, with the meal, through the closed meal spouts, into and through the closed meal chest.

In the Robinson patent the small orifice in the center of the top of the curb is tightly stopped up by a tube which extends downward into the eye of the upper stone, the outside of the tube filling the interior of the eye. The object must have been, as the necessary operation was, to prevent the passage of air over the top of the upper stone, inside of the curb, and to force it to go down into the eye and between the grinding faces of the stones. Thus, the operation is the reverse of that in the plaintiff's patent. Moreover, Robinson has no current of air traversing the length of the meal chest and carrying off the moisture which arises from the meal as the screw conveyor operates upon it. The elements combined in Robinson's are not combined in the same way as in the plaintiff's patent, to produce the same result by the same mode of operation.

As to the Cartier arrangement, which is the one most earnestly pressed, I have examined with care all the evidence in regard to it. It would be unprofitable to discuss such evidence minutely. It is sufficient to say that the description and drawings of Cartier do not furnish such clear and definite information as to enable a skilled person, beyond any reasonable doubt, by following them, without aid from anything not known when they were made, to construct an apparatus like the plaintiff's. They do not meet the requirement of law in regard to what is necessary, in a prior description and drawings, to defeat a subsequent patent. They are neither full nor clear nor exact.

The only other point urged in defence is that the original patent was granted to John Denchfield, and that the re-issue is to John Denchfield, and is therefore void. The re-issued patent states that the original was issued to "him," that is,

John Deuchfield; that it had been surrendered and cancelled, and that a new patent has been ordered to issue to "him." The plaintiff has put in evidence a certificate of extension which states that on the petition of John Deuchfield for the extension of the patent granted to him April 20, 1858, and re-issued January 16, 1872, it is extended for seven years from April 20, 1872. An original patent is in evidence which was granted to John Denchfield, April 20, 1858, for 14 years from that day; and there is no dispute that that is the patent which was surrendered when the re-issued patent to John Deuchfield was granted, and that no original patent was granted to John Deuchfield unless the one so granted to John Denchfield was one. The real name of the man was Denchfield. The mistake was clearly one made in the patent office—a clerical and accidental mistake in taking the letter n to be the letter u.

The defendants did not, at any stage of the taking of the proofs in the cause, raise any question as to the identity of the person to whom the re-issue was granted with the original patentee, either when the documentary proofs were being put in or when the oral testimony was being taken. In the defendants proofs the questions to their witnesses, and the answers thereto, refer to the re-issue as having been granted to John Denchfield, and as having been granted to the same person to whom the patent of April 20, 1858, was granted. If the point had then been suggested doubtless the plaintiff would have proved, in fact, the identity of John Deuchfield with John Denchfield. Such identity seems to have been shown in *Herring* v. *Nelson*, the evidence in which case is made part of this case by stipulation and notice. The question is one of identity merely. *Panes* v. *Whitbread*, 11 C. B. 406; *Jackson* v. *Boneham*, 15 John. 226; *Jackson* v. *Cody*, 9 Cow. 140. The defendants gave no evidence to show that there was any such person as John Deuchfield, or that the re-issue was not intended to be issued, or was not, in fact, issued, to the same person to whom the original patent was granted. Indeed, there is sufficient in the proofs, in the evidence given by the plaintiff as a witness, to show that the

person to whom the original patent was granted, and whose name was John Denchfield, was the person to whom the re-issue was granted. Such proof is always competent in a case like this. *Jackson* v. *Stanley*, 10 John. 133. See *Northwestern Fire Extinguisher Co.* v. *Philadelphia Fire Extinguisher Co.* 6 O. G. of Pat. Office, 34. Infringment of the first claim of the re-issue is proved, and not contested. As the patent has expired there can be no injunction, but the plaintiff is entitled to the usual decree, in other respects, in regard to said first claim.